United States District Court
Southern District of Texas
**ENTERED**
January 25, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:15-CR-429 |
| | § | |
| GABRIEL  VELA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the Court is Defendant Gabriel Vela's (Vela) Motion to Suppress Evidence.  D.E. 66.  Vela is charged by indictment with knowingly possessing firearms and ammunition as a felon.  D.E. 1.  The firearms and ammunition were discovered as a result of a traffic stop for driving without automobile insurance.  D.E. 68.  Vela argues that there was inadequate evidence of lack of insurance to justify the traffic stop, and the traffic stop was impermissibly prolonged.  D.E. 66.  The Government filed a response to Vela's motion (D.E. 68), and on December 8, 2015, the Court held an evidentiary hearing.  After due consideration of the evidence and arguments of the parties, the motion (D.E. 66) is DENIED.

### FACTS

On March 2, 2015, Officer Isaac DeLeon (Officer DeLeon) observed a black Saturn driving northbound on Highway 77.  He ran a search on the vehicle's license plate using the Mobile Data Terminal (MDT) in his patrol vehicle to determine if the vehicle was insured, and the result showed an "unconfirmed" insurance status.  Officer DeLeon has been employed as a criminal interdiction officer under the narcotics unit of the

Robstown Police Department for five and a half years.  As an interdiction officer, he patrols Highway 77 in an attempt to stop the flow of narcotics, weapons, and money laundering between Mexico and the United States.  He conducts about 200-250 traffic stops per month.

Officer DeLeon and another Robstown police officer, Jason Guerra,[1] testified that they regularly use the MDT to determine if a vehicle is insured, and such a search will result in either a "confirmed" or an "unconfirmed" insurance status.  In their experience, 80% to 85% of the vehicles that have an "unconfirmed" insurance status do not have valid insurance.  Occasionally, a vehicle that is properly insured shows up as "unconfirmed" because the vehicle was recently insured (a few days to two weeks) and the data has not been updated.  Both officers testified that the MDT system is accurate and reliable.

Because the MDT search on the black Saturn revealed that the insurance status was "unconfirmed," Officer DeLeon initiated a traffic stop.  Defendant Vela initially pulled over to the left shoulder, but Officer DeLeon instructed him to move the vehicle to the right shoulder to avoid creating a traffic hazard.  Officer DeLeon testified that he became suspicious when Vela pulled over on the wrong side of the road.  However, as pointed out by the defense, the road was under construction and there were orange barriers on the right side.  Officer DeLeon approached the driver and asked him to step to the back.  Officer DeLeon then told Vela why he had stopped the vehicle and asked him if he had insurance and a driver's license.  Vela had neither.  He gave the officer an

---

[1] Officer Guera has been employed as a Robstown police officer for two and a half years.

identification (ID) card.  While speaking to Vela, Officer DeLeon noticed that Vela was nervous and evasive with his answers.  He hesitated in responding, did not give direct answers, and seemed like he did not know exactly where he was coming from.  Vela was moving around a lot and gesturing dramatically with his hands, which the officer felt indicated deceptive behavior based on his training and experience.  Officer DeLeon asked Vela who the passengers were, where they were coming from, and whether there was anything in the vehicle the officer needed to know about.  Vela responded that they were coming from Alice and that there was nothing in the vehicle.  Because the officer did not think he was getting truthful information or direct answers, he made contact with the front passenger, Jason Garcia (Garcia).

Garcia's answers conflicted with Vela's.  Garcia stated that they were coming from Falfurrias and that there was a gun in the trunk.[2]  Officer DeLeon called for backup and ran Vela's ID card through the MDT, which indicated that Vela was a confirmed gang member.  Officer DeLeon testified that based on his training and experience, he believed there was additional criminal activity occurring because of the information he received and his interactions with Vela and Garcia.

Once backup arrived, Officer DeLeon asked Vela for consent to search his vehicle and Vela gave consent.  In the trunk, the officers found two firearms—an AK47 and a loaded handgun—and ammunition hidden under some clothes and other belongings. Officer DeLeon testified that Vela did not object to the search at any point, and he was

---

[2] At Garcia's sentencing hearing on January 13, 2016, he denied telling the officer that there was a weapon in the trunk.

cooperative and told the officers where they could find the firearms.  Vela and Garcia were arrested because each had a prior felony conviction.

The Government introduced a video of the traffic stop, but there was no audio. The officer testified that audio is generally available and he did not know why the audio was not working.  The defense pointed out that in another recent case, this officer's audio was also not on.

## DISCUSSION

Vela is entitled to the protections of the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures.  Because the search was conducted without a warrant, the Government bears the burden of showing by a preponderance of the evidence that the search was reasonable.  *United States v. Jeffers*, 342 U.S. 48, 51 (1951).  To satisfy this burden in the context of a traffic stop, the Government must meet the two prong test articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). First, the Government must show that the stop was justified at its inception.  *Id.* at 20. Second, the Government must show that the officer's actions were reasonably related in scope to the circumstances that justified the stop.  *Id.*

In Texas, a person may not operate a motor vehicle unless financial responsibility is established for the vehicle.  Tex. Trans. Code Ann. §601.051 (Vernon 1999).  Officer DeLeon testified that during his five and a half years as a police officer, he has enforced this law by routinely running insurance checks on his MDT.  Based on Officer Deleon's experience, when the MDT check returns an "unconfirmed" insurance status, he is reasonably certain that the vehicle does not have insurance as required by law.  The Court

4 / 7

finds that when the MDT check on Vela's car returned an "unconfirmed" insurance status, Officer DeLeon had reasonable suspicion to justify the traffic stop. *See Short v. State,* No. 09-10-00489-CR, 2011 WL 3505611, at *3 (Tex. App. Aug. 10, 2011) (officer's experience with MDT and opinion it was accurate contributed to finding of reasonableness). Accordingly, the first prong of the *Terry* test is met.

To satisfy the second prong of the *Terry* test, the Government must show that either (a) the duration of the traffic stop did not exceed the time reasonably required to effectuate the purpose of the stop;[3] or (b) the officer developed reasonable suspicion supported by articulable facts that a crime had been or was being committed.[4] In the course of effectuating the stop, an officer can request a driver's license, insurance papers, and vehicle registration, and can run a computer check to determine whether the driver has any outstanding warrants or if the vehicle is stolen. *United States v. Brigham*, 382 F.3d 500, 507-508 (5th Cir. 2004). An officer may also ask about the purpose and itinerary of the trip as part of his investigation of the circumstances that originally caused him to make the stop. *Id.* at 508. If the law enforcement officer develops reasonable suspicion of additional criminal activity during this investigation, he may further detain the vehicle's occupants for a reasonable time while appropriately attempting to dispel this new reasonable suspicion. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.) *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

---

[3] *United States v. Santiago*, 310 F.3d 336, 341–42 (5th Cir. 2002) (Fourth Amendment violation when duration of stop extends beyond valid reason for stop).

[4] *United States v. Valadez,* 267 F.3d 395, 398 (5th Cir. 2001) (detention must end unless there is additional articulable, reasonable suspicion).

Here, the Government asserts that Officer DeLeon developed new reasonable suspicion of criminal activity during the course of the traffic stop.  Vela challenged the reasonableness of this new suspicion at the suppression hearing, arguing that because there were reasonable explanations for each of the things Officer DeLeon found suspicious, the search was impermissibly based on nothing more than a hunch.  However, in reviewing the reasonableness of Officer DeLeon's suspicion, the Court considers the totality of the circumstances while giving due regard to the experience and training of the law enforcement officer.  *Brigham*, 382 F.3d at 507.

Officer DeLeon testified to several factors that led him to believe, based on his experience in law enforcement, that Vela was involved in criminal activity.  Vela seemed deceptive and evasive when he answered questions about the passengers in the vehicle and their travel itinerary.  He hesitated before answering questions and would not give direct answers.  During questioning, Vela appeared nervous; he moved around quite a bit and gestured dramatically with his hands, which, based on the officer's training, indicated that Vela could be lying.  Officer DeLeon's suspicions were confirmed when he questioned the passenger, who gave conflicting information.

Based on the factors articulated by Officer DeLeon and his experience in law enforcement, this Court finds that Officer DeLeon had a new reasonable suspicion to continue the stop after its initial purpose had been fulfilled.  The second prong of the *Terry* test is satisfied.  Thus, the Government has met its burden of showing that the traffic stop and subsequent search did not violate the Fourth Amendment.

## CONCLUSION

For the reasons stated above, Defendant Gabriel Vela's Motion to Suppress Evidence (D.E. 66) is DENIED.

ORDERED this 25th day of January, 2016.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE